FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VINCENT J.,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>    Defendant. | No. 2:20-CV-0227-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 21, 22. Attorney Chad Hatfield represents Vincent J. (Plaintiff); Special Assistant United States Attorney Sarah L. Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits in July 2017, alleging disability since October 31, 2016, due to

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

"Scoliosis, Back Pain, Gastro Issues, [and] Insomnia." Tr. 200, 204, 236. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Stewart Stallings held a hearing on February 8, 2019, Tr. 30-64, and issued an unfavorable decision on April 3, 2019, Tr. 15-25. The Appeals Council denied Plaintiff's request for review on April 29, 2020. Tr. 1-6. The ALJ's April 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 18, 2020. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born on October 24, 1970, Tr. 203, and was 46 years old on the alleged disability onset date, October 31, 2016. Tr. 200. He completed high school in 1990 and earned a certification in welding. Tr. 36, 237. He has past work in welding and metal fabrication, in construction, and as a nurse assistant. Tr. 38, 55-56, 237.

Plaintiff's disability report indicates he stopped working on June 1, 2015 because of his conditions. Tr. 236. Plaintiff testified at the administrative hearing that he last worked in 2016 and stopped working because of upper back pain that eventually travelled to his lower back. Tr. 37-39, 40. He stated the pain radiated to his right leg and he had numbness/tingling in both hands and his fingers. Tr. 39-40. When he experiences the numbness/tingling sensation in his hands, he does not want to touch anything. Tr. 47-48. Plaintiff indicated he also has irritable bowel syndrome and there are days (at least three times a week) when he needs to constantly use the bathroom. Tr. 49.

Plaintiff testified he has good days and bad days. Tr. 41. On a good day, he is able to sit for a couple of hours and then must either lie down or walk around. Tr. 42. He will walk for about ten minutes or lie down for about an hour and will then be able to sit for another two hours. Tr. 42-43. On a bad day, he hurts and does not want to move. Tr. 43. He stated there are days when he does not leave

the couch, Tr. 43, and will lie down for eight hours or more, Tr. 45. He is not able to concentrate and is irritable on bad days. Tr. 47. He indicated he has bad days three to four times a week. Tr. 45.

Plaintiff testified he was discharged from physical therapy because on "bad days," when his back was hurting and/or he was having issues with his stomach, he was not able to make it to appointments. Tr. 50-52. Since he had not completed physical therapy, his insurance had not approved an MRI for his back. Tr. 52.

Plaintiff indicated he took muscle relaxers and a nerve medication for his pain but did not want to take pain pills. Tr. 45-46. His medications caused him to be tired. Tr. 46.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision

supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant has the burden of establishing a prima facie case of disability by showing that severe impairments prevent the performance of past relevant work. *Tackett*, 180 F.3d at 1098-1099. Once the claimant establishes a prima facie case, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled.

## ADMINISTRATIVE DECISION

On April 3, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 31, 2016, the alleged onset date. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: scoliosis, facet spondylosis, degenerative disc disease of the spine, and obesity. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform a limited range of light exertion level work with the

following limitations: he can lift and carry a maximum of 10 pounds frequently and a maximum of 20 pounds occasionally; he can sit for a total of six hours in an eight-hour workday with normal breaks and stand and walk for a total of six hours in an eight-hour workday with normal breaks, but would need to alternate between sitting and standing at 30-minute intervals; he can never climb ladders, ropes or scaffolds, kneel, or crawl; he can rarely crouch; he can occasionally climb ramps and stairs and stoop; he can frequently handle and finger bilaterally; and he can never have exposure to moving machinery or unprotected heights. Tr. 20.

At step four, the ALJ found Plaintiff was not able to perform his past relevant work. Tr. 23.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of office helper, electronic worker and marker. Tr. 23-24.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 31, 2016, the alleged onset date, through the date of the ALJ's decision, April 3, 2019. Tr. 24-25.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff raised the following issues for review: (1) Did the ALJ err in rejecting severe impairments as groundless at step two; (2) Did the ALJ err by failing to conduct an adequate analysis at step three, failing to meet his duty to develop the record, and failing to find Plaintiff disabled as meeting or equaling a Listing; (3) Did the ALJ err in rejecting Plaintiff's subjective complaints; and (4) Did the ALJ err in failing to meet his burden at step five? ECF No. 21 at 8-9.

# DISCUSSION

## A. Step Two

Plaintiff contends the ALJ erred at step two of the sequential evaluation process by not finding severe the following impairments: (1) lumbar radiculopathy, with involvement of the right L5 dermatome, and X-ray showing degenerative disc disease at L5-S1; (2) bilateral upper extremity radiculopathy; and (3) postural dysfunction with superior T4 syndrome, positive thoracic compression test, decreased thoracic mobility, and triceps and serratus weakness. ECF No. 21 at 11-12; ECF No. 23 at 2. Defendant responds that Plaintiff has not shown the ALJ failed to consider any impairment and the step two finding is supported. ECF No. 22 at 2-3.

Plaintiff has the burden of proving he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows he has a severe impairment. 20 C.F.R. § 416.912(a). Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find a claimant lacks a medically severe impairment or combination of impairments at step two when this conclusion is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether substantial evidence supported the ALJ's determination that medical evidence clearly established Plaintiff did not have a severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Webb*, 433 F.3d at 687.

The Court notes that Plaintiff's disability application did not assert disability from the specific spinal diagnoses noted in his argument or radiculopathy from his back impairment. *See* Tr. 236 (alleging disability due to "Scoliosis, Back Pain, Gastro Issues, [and] Insomnia"). Plaintiff's briefing states that the medical record

establishes he has these various ailments, ECF No. 21 at 11-12; ECF No. 23 at 1-2; however, "the mere existence of an impairment is insufficient proof of a disability," *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); *Edlund v. Massanari*, 253 F.3d 1152, 1159-1160 (9th Cir. 2001) (a claimant must prove an impairment affects his ability to perform basic work activities). Moreover, while Plaintiff asserts he should be limited to occasional handling and fingering as a result of the medical records he cites in his argument, he fails to establish this specific functional limitation is present in the record and supported. The Court finds Plaintiff's back impairments and symptoms were considered in the decision and were specifically accounted for in the RFC assessment by limiting Plaintiff to a limited range of light exertion work with postural and manipulative limitations. Tr. 20. Any error the ALJ may have made in failing to include any specific spinal diagnosis at step two was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to include impairment as severe at step two was harmless error where ALJ considered the limitations posed by the impairment at step four); *Johnson v. Shalala,* 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result); *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

**B.     Step Three**

Plaintiff contends the ALJ erred at step three of the sequential evaluation process by failing to cite or discuss any record evidence, failing to make adequate findings concerning Listing 1.04, failing to meet his duty to develop the record, and failing to find Plaintiff disabled as meeting or equaling a Listing. ECF No. 21 at 12-14; ECF No. 23 at 3-5. Defendant asserts Plaintiff failed to meet his burden of showing his back impairment met or equaled a Listing, there was no ambiguity or inadequacy that required record development, and the ALJ's analysis is supported by substantial evidence. ECF No. 22 at 3-7.

### 1. Listing 1.04

Plaintiff argues he meets or equals all elements of Listing 1.04A and the ALJ's step three finding fails to provide any reasoning or record evidence to support a finding to the contrary. ECF No. 21 at 12-13; ECF No. 23 at 3-5. Defendant responds that Plaintiff failed to demonstrate his back impairment met or equaled a listing and the ALJ's analysis was sufficient. ECF No. 22 at 4-6.

An ALJ must adequately explain a conclusion that an impairment does not meet or equal a Listing. The Ninth Circuit has held that in "determining whether a combination of impairments establishes equivalence" under step three of the Listings, a mere statement that "[a claimant] did not equal the listing [is] insufficient." *Murphy v. Commissioner Social Sec. Admin.*, 423 Fed. Appx. 703, 704 (9th Cir. 2011) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)) (holding boilerplate finding is insufficient to conclude impairment does not meet a Listing). However, the claimant ultimately bears the burden of producing evidence to establish a Listing's requisite medical findings. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step Three); *Burch v. Barnhart*, 400 Fd.3d 676, 683 (9th Cir. 2005).

At step three, the ALJ specifically considered Listing 1.04 (Disorders of the spine) and indicated there was no evidence Plaintiff's musculoskeletal impairments of the spine had resulted in compromise of a nerve root or the spinal cord with evidence of nerve root compression accompanied by sensory or reflex loss and positive sitting and supine straight-leg raising tests. Tr. 19. The ALJ further noted no physician of record had opined the severity of Plaintiff's impairments of the spine would be of equal medical significance to any Listing. Tr. 19; *see* Tr. 69-74, 99-104. The ALJ thus concluded the severity of Plaintiff's musculoskeletal impairments did not meet or equal the criteria of Listing 1.04. Tr. 19.

///

The evidence of record supports the ALJ's finding at step three with respect to Listing 1.04. Listing 1.04A, entitled "Disorders of the spine," provides, in relevant part:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

As noted by the ALJ, Tr. 21-22, during the relevant time period in this case, the medical record reflects Plaintiff had normal muscle strength, negative straight leg raise tests, full range of motion, no tenderness, normal reflexes, and grossly intact sensation, Tr. 326, 329, 359, 387, 390, 396-397. There has been no showing that all of the requirements of Listing 1.04 were met during the relevant time period. Therefore, any assessed error based on the ALJ's failure to adequately address Listing 1.04A would be harmless.

Because the ALJ's step three determination is sufficiently supported and, in any event, the evidence of record does not reflect Plaintiff meets or equals the requirements of Listing 1.04, the Court concludes the ALJ did not err at step three.

**2.    Duty to Develop Record**

Plaintiff also contends the ALJ erred by failing to meet his duty to develop the record and a remand is required for further development of the record, imaging of Plaintiff's spine, and medical expert testimony to determine whether he meets or equals Listing 1.04. ECF No. 21 at 14. Defendant asserts Plaintiff has identified

///

no ambiguities or inadequacy in the evidence to trigger further development of the record. ECF No. 22 at 6-7.

An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff has failed to identify any specific ambiguities in the record to trigger the ALJ's duty to develop the record, and the Court finds the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. The ALJ did not err by failing to further develop the record in this case.

### C.  Plaintiff's Subjective Complaints

Plaintiff next challenges the ALJ's rejection of Plaintiff's symptom testimony. ECF No. 21 at 14-20. Defendant responds that the ALJ reasonably found Plaintiff's testimony inconsistent with his limited treatment history, daily activities, and the objective medical findings. ECF No. 22 at 8-12.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those

symptoms were not entirely consistent with the medical and other evidence of record. Tr. 20.

The ALJ first determined Plaintiff's treatment history was inconsistent with debilitating impairments. Tr. 21. The ALJ specifically indicated the record did not reflect Plaintiff had sought or required significant forms of treatment for his alleged disabling impairments. Tr. 21.

Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests a lower level of both pain and functional limitation). Furthermore, an ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

It was noted in November 2018 that Plaintiff was not a candidate for surgery and had been previously prescribed the conservative treatment measures of physical therapy and medication for his pain. Tr. 386, 392-393. Plaintiff testified he took muscle relaxers and a nerve medication for his pain but refused to take narcotic pain medications. Tr. 45-46. Plaintiff reported muscle relaxants alleviated his pain in April 2016, Tr. 302, gabapentin and Flexeril (a muscle relaxant) had previously helped with pain, Tr. 328, and Cyclobenzaprine (a muscle relaxant) was noted as beneficial in May 2018, Tr. 389. Plaintiff's limited treatment efforts are further evidenced by minimal medical records in this case.

The ALJ properly relied on Plaintiff's minimal, conservative treatment and effective medication management in evaluating the severity of Plaintiff's symptoms in this case.

The ALJ additionally found Plaintiff's allegations of disabling impairments were not substantiated by the objective medical evidence. Tr. 21.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006).

Examination findings during the relevant time period were mostly normal or mild. In June 2017, Plaintiff had normal muscle tone and strength, no tenderness, normal gait and station, and grossly intact nerves, Tr. 326; in May 2018, he had normal movement of all extremities, normal tone and motor strength, and no tenderness, Tr. 390; in November 2018, he had full spinal range of motion with no spasms, normal gait and station, grossly intact sensation normal reflexes, a negative seated straight leg raise test, and normal leg strength, Tr. 387; and in December 2018 he had normal range of motion and negative straight leg raise tests, Tr. 392, no atrophy, normal gait, full motor strength, and normal sensation and reflexes, Tr. 396-397.

Plaintiff contends the ALJ failed to acknowledge Plaintiff's radiating symptomology to his right leg, positive right straight leg raise testing, and positive Kemp testing (a test for facet joint pain). ECF No. 21 at 19 citing Tr. 396 & 398. The ALJ did not ignore the foregoing medical report but instead discussed it, found Plaintiff's scoliosis was assessed as being only mild, and noted it was recommended Plaintiff try physical therapy for six to eight weeks to help alleviate pain before trying other options. Tr. 21, 398. While there is a positive straight leg test on the right at this examination, Tr. 396, as noted above, the report did not indicate whether it was positive in both the sitting and supine positions and the record reflects negative straight leg tests at other appointments.

Plaintiff also contends the ALJ erred by failing to consider Plaintiff's alleged manipulative limitations. ECF No. 21 at 19. As asserted by Defendant, ECF No.

22 at 12, the ALJ considered Plaintiff's manipulative limitations, *see* Tr. 20 (frequently handle and finger bilaterally), and found Plaintiff's allegations of greater hand limitations inconsistent with evidence showing he had normal sensation, reflexes, and nerves, Tr. 303, 326, 329, 333, 338, 342, 346, 387, 390, 397.

As concluded by the ALJ, the objective medical evidence demonstrates Plaintiff was not as limited as he alleged in this case.

The ALJ also noted Plaintiff's acknowledged activities established he could perform the limited range of light work outlined in the RFC determination. Tr. 21.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that a claimant's activities "contradict claims of a totally debilitating impairment." *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-1113 (9th Cir. 2012) (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted));

As noted by the ALJ, in April 2016, prior to the alleged onset date, Plaintiff arrived for treatment carrying a backpack and reported increased pain with activities but indicated the only activity he was no longer able to perform was "Jeeping." Tr. 21, 301-302. The record reflects Plaintiff reported in December 2017 he had "some difficulty" doing laundry, cooking, cleaning and shopping but that he had no significant difficulty with personal care or hygiene. Tr. 21, 380. Plaintiff testified at the administrative hearing he was able to donate plasma and do chores, but he needed to alternate between sitting and standing/walking while performing those chores. Tr. 21, 42. The ALJ reflected this need to alternate

1  between sitting and standing at 30-minute intervals in his RFC determination.  Tr.
2  20.
3       It appears reasonable for the ALJ to have concluded Plaintiff's activities
4  were inconsistent with his allegations of totally disabling symptoms and thus
5  detracted from his overall credibility.  *See Rollins v. Massanari*, 261 F.3d 853, 857
6  (9th Cir. 2001) (affirming the ALJ's adverse credibility determination and noting
7  the claimant's claim of disability was undermined by testimony about her daily
8  activities, such as attending to the needs of her two young children, cooking, and
9  shopping).  However, even if the Court determined the ALJ erred by finding
10 Plaintiff's level of activity inconsistent with his subjective complaints, given the
11 ALJ's other reasons for finding Plaintiff less than fully credible, as indicated
12 above, the Court finds this error would be harmless.  *See Carmickle v. Comm'r,*
13 *Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse
14 credibility finding where ALJ provided four reasons to discredit claimant, two of
15 which were invalid); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197
16 (9th Cir. 2004) (affirming credibility finding where one of several reasons was
17 unsupported by the record).
18      The ALJ is responsible for reviewing the evidence and resolving conflicts or
19 ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
20 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in
21 evidence. *Richardson*, 402 U.S. at 400.  The Court has a limited role in
22 determining whether the ALJ's decision is supported by substantial evidence and
23 may not substitute its own judgment for that of the ALJ even if it might justifiably
24 have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  After
25 reviewing the record, the Court finds that the ALJ provided clear and convincing
26 reasons, which are fully supported by the record, for finding Plaintiff's symptom
27 allegations were not entirely credible in this case.
28 ///

### D. Step Five

Plaintiff's final contention is that the ALJ erred at step five of the sequential evaluation process by relying on an incomplete hypothetical to the vocational expert that neglected to include several of Plaintiff's limitations. ECF No. 21 at 20-21. Defendant asserts the ALJ's step five finding is supported by substantial evidence. ECF No. 22 at 12-13.

As indicated above, Plaintiff has failed to demonstrate the ALJ has otherwise erred in this case. Therefore, the ALJ's RFC determination is sustained. At the administrative hearing, the vocational expert testified that with the RFC assessed by the ALJ, Plaintiff retained the capacity to perform a significant number of jobs existing in the national economy. Tr. 24, 57-59. Since the vocational expert's testimony was based on a properly supported RFC determination by the ALJ, the Court finds the ALJ did not err at step five of the sequential evaluation process in this case.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of error. Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

**IT IS SO ORDERED**. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED July 29, 2021.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE